UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEGON WALKER,<br><br>        Plaintiff,<br><br>   v.<br><br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE, et al.,<br><br>        Defendants. | Case No. 1:12-cv-10811-RWZ |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.    Walker Misstates the Law, and the Defendants' Argument, Concerning the Interpretation of University-Student Contracts.**

In their opening Memorandum, the defendants correctly cited the standard that courts in Massachusetts, including the First Circuit, apply in construing contracts between a university and its student: Courts "interpret such contractual terms in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." Def. Mem. at 7-8 (citations omitted). Walker suggests in her opposition that the defendants relied on a single case, *Havlik v. Johnson & Wales University*, 509 F. 3d 25 (1st Cir. 2007), and that *Havlik,* decided under Rhode Island law, applied principles different from Massachusetts law. Pl. Opp. at 12-14. That contention is wrong in both respects. The defendants cited not just *Havlik* but also multiple cases applying Massachusetts law. Def. Mem. at 8. More to the point, there is no difference between Massachusetts and Rhode Island law on this issue. The standard the First Circuit applied in *Havlik* is precisely the standard that Massachusetts courts have employed in school-student contract cases for over thirty years. *See, e.g., Cloud v. Trs. of Boston Univ.*, 720 F. 2d 721, 724 (1st Cir. 1983) (applying Massachusetts

law); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2000) (citing *Cloud*); *Driscoll v. Bd. of Trs. of Milton Acad.*, 70 Mass. App. Ct. 285, 293 (2007) (quoting *Cloud*).

Walker also contends that Harvard is not entitled to any deference in its interpretation of its rules and that the Court should not scrutinize Harvard's conduct using the "arbitrary and capricious" standard, arguing that "[t]hose standards apply only if there are no Handbook rules in place covering the dispute." Pl. Opp. at 14-15. That contention also is wrong. Judicial deference to university decision-making is warranted not only in the absence of "Handbook rules," but also with respect to a university's interpretation and application of such rules. *See, e.g.*, *Kiani v. Trs. of Boston Univ.*, No. 04–cv–11838, 2005 WL 6489754, at *6-7 (D. Mass. Nov. 10, 2005); *Dinu v. President and Fellows of Harvard Coll.*, 56 F. Supp. 2d 129, 131-33 (D. Mass. 1999); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316-17 (D. Mass. 1997); *Schaer*, 432 Mass. at 481; *Coveney v. President & Trs. of Coll. of Holy Cross*, 388 Mass. 16, 19-20 (1983); *Sullivan v. Boston Architectural Ctr., Inc.*, 57 Mass. App. Ct. 771, 773-75 (2003). [1]

### B.   There is No Genuine Dispute that Harvard's Plagiarism Rule Applied to Walker's February 24 Draft.

As the defendants demonstrated in their opening Memorandum, Walker's February 24 draft was not merely missing a citation or two; rather, it was rife with material Walker had copied verbatim from numerous sources without any attribution. Def. Mem. at 2-4. Moreover, the defendants demonstrated that Walker submitted the draft knowing full well that: it would go directly into the sub-cite process, the purpose of which was to check the accuracy of all the article's citations; the editors' job was to check the citations she provided, not to determine

---

[1] In addition to misstating the law, Walker's Response to Defendants' Statement of Undisputed Material Facts does not comply with Local Rule 56.1. Walker purports to "qualify" any number of admitted facts with references to her self-serving deposition testimony, all in an attempt to create factual controversies where none exist. To take just one example, in Walker's Response to Facts ¶ 110, she does not address the stated facts, but instead recites a litany of allegations concerning Weinreb and Cosgrove from her Complaint, all of which are plainly controverted in the record. Def. Mem. at 11-16. Such responses are improper and should be disregarded.

whether any citations were missing altogether; and she would have the opportunity to make only minor changes – not vast changes comprising dozens of missing quotations and citations – and only after the cite-check process, during final "author edits." *Id.* Walker argues in response that "she could not reasonably have expected [the usual editing] process to be applied to her draft article, nor that her [February 24 draft] would be subjected to Harvard's plagiarism rule." Pl. Opp. at 5. Walker's purported "expectations" are unreasonable on their face and are contradicted by her own testimony.

Walker admitted in her deposition that she understood her February 24 draft needed to contain citations to all of her sources because it would go directly into the sub-cite process, the very purpose of which was to check the accuracy and completeness of all the citations in her article. Facts ¶ 36. Indeed, she argues in her Opposition that "she wanted to be involved in the tech-editing process," Pl. Opp. at 8, and "was trying to involve [herself] in the sub-cites [process] especially." *Id*. at 10. These admissions completely undermine Walker's argument that she "could not reasonably have expected" that the usual editing process – indeed, the only editing process JOLT has – would apply to her draft. More significantly, Walker also admitted in her deposition that she understood the Handbook's plagiarism rule applied not only to her February 24 draft, but to *all* drafts of the article that she turned in to JOLT. Facts ¶ 9.

In light of these critical admissions, the evidence viewed in the light most favorable to Walker simply does not create any genuine dispute of material fact.[2] Walker goes on at length in her opposition in her attempt to demonstrate that: the draft was unfinished as a result of a

---

[2] *See Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F. 2d 5, 8 (1st Cir. 1990) ("[C]onclusory allegations, improbable inferences, and unsupported speculation" will not defeat a motion for summary judgment.); *Ricci v. Alternative Energy Inc.*, 211 F.3d 157, 161 (1st Cir. 2000) ("Evidence presented on summary judgment may be 'inherently incredible' and so disregarded.") (quoting *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F. 2d 932, 936 (1st Cir. 1987)).

setback she suffered from a computer virus; she intended, and requested the opportunity, to do more work on the draft; the editors knew the draft needed more work; and she provided copies of all of her sources to JOLT. Pl. Opp. at 7-10. Far from being material, all of that is entirely beside the point. Walker has admitted the inescapable material facts: she not only should have expected but actually knew that her February 24 draft needed to include citations to all of her sources and that, as with any work a student turns in, the Handbook's plagiarism rule applied.

Moreover, even if there were evidence that Walker in fact believed it was permissible for her to turn in a draft article rife with material she had copied from various sources without attribution – and there is no such evidence – summary judgment is appropriate in any event because such an expectation is not reasonable. What the Handbook's unambiguous plagiarism rule means is a question of law for the Court. *See Driscoll*, 70 Mass. App. Ct. at 293 (citing *Berkowitz v. President & Fellows of Harvard College*, 58 Mass. App. Ct. 262, 270 (2003)). Where, as here, the student's expectations as to what a handbook means are unreasonable, the school is entitled to judgment as a matter of law. *See, e.g. Kiani*, 2005 WL 6489754 at *1, 5-7*; Schaer*, 432 Mass. at 479-81; *Morris v. Brandeis Univ.*, No. 01-P-1573, 2004 WL 369106, at *3 (Mass. App. Ct. Feb. 27, 2004); *Sullivan*, 57 Mass. App. Ct. at 774.[3]

### C. Walker Also Misstates the Law Concerning Her Defamation Claim.

In their opening Memorandum, the defendants demonstrated that Walker's defamation claim fails because the statements of which she complains are indisputably true and because even assuming one or more of the statements at issue was false, it is beyond dispute that they were privileged. Def. Mem. at 18-19. In response, Walker asserts that the defendants' privilege

---

[3] This case is easily distinguished from *DMP v. Fay Sch. ex rel. Bd. of Trs.*, 933 F. Supp. 2d 214 (D. Mass 2013), on which Walker principally relies. Pl. Opp. at 13-14. The court denied summary judgment for the school in that case because the handbook contained conflicting provisions as to whether a hearing was required before a student could be expelled and a student reasonably would expect the right to be heard before expulsion. *Id.* No such inconsistency in the rules exists here and it is undisputed that Walker was granted a full evidentiary hearing.

argument "is supported by dubious authority," noting that one of the cases on which the defendants rely, *Bratt v. International Business Machines Corporation*, 392 Mass. 508 (1984) is thirty years old.  Pl. Opp. at 20.  Walker's suggestion that *Bratt* is no longer good law is simply incorrect.  *See, e.g., Sovie v. Town of N. Andover*, 742 F. Supp. 2d 167, 174 (D. Mass. 2010) (explaining the conditional privilege and noting that abuse of the privilege must be shown by clear and convincing evidence).  Walker offers no evidence, much less clear and convincing evidence, that the defendants abused the conditional privilege.

## Conclusion

The defendants' Motion for Summary Judgment should be allowed.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE, ELLEN COSGROVE and LLOYD WEINREB,

/s/ Daryl J. Lapp
Daryl J. Lapp, BBO No. 554980
  dlapp@edwardswildman.com
Jamie C. Notman, BBO No. 675597
  jnotman@edwardswildman.com
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA  02199
(617) 239-0100

February 21, 2014

### CERTIFICATE OF SERVICE

On February 21, 2014, I caused a true copy of the foregoing document to be filed electronically using the CM/ECF system, which effected service upon all counsel of record.

/s/ Jamie C. Notman
Jamie C. Notman

AM 28961503.7