UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10811-RWZ

MEGON WALKER

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE, *et al.*

MEMORANDUM OF DECISION

December 30, 2014

ZOBEL, D.J.

Plaintiff Megon Walker sued defendants President and Fellows of Harvard College, Ellen Cosgrove, the Dean of Students at Harvard Law School, and Lloyd Weinreb, Professor of Law at Harvard Law School and Chair of its Administrative Board, for breach of contract and defamation, seeking damages and injunctive relief. Defendants have moved for summary judgment.

**I. Facts**

The plaintiff attended Harvard Law School ("HLS") from 2006 to 2009. She was a member of the Journal of Law and Technology ("JOLT") all three years. As a first year student, she was a "sub-citer," verifying the accuracy of citations and quotations of draft articles JOLT selected for publication. In plaintiff's third year of law school, JOLT accepted her application to write a case comment on *In Re Bilski*, 545 F.3d 943 (Fed.

Cir. 2008) (en banc),[1] for publication in the journal that spring.  Plaintiff was expected to present a completed draft by February 1, 2009, and she understood that the draft would have to include citations to her sources.

Ms. Walker delivered a first draft of her comment to JOLT on February 2, 2009, a second draft on February 8, 2009, and a third draft on February 16, 2009. Plaintiff's fourth and final draft was due February 22, 2009. She turned it in late, on February 24, 2009.

After sub-citing of plaintiff's draft comment was completed, JOLT staff began "tech edits," in which the focus is on spelling, grammar, punctuation and other errors. During this process, concerns arose that plaintiff's argument was derivative of one of the dissents in the *Bilski* case and that it was similar to other published pieces.  As a result of these concerns, the co-Editors-in-Chief of JOLT, Bradley Hamburger and Lindsay Kitzinger, decided to halt further production until their concerns could be addressed.

Mr. Hamburger reviewed plaintiff's entire draft for plagiarism, using Google to run internet searches on full sentences from her final draft.  Hamburger found that significant portions of the article had been copied from other publications concerning the *Bilski* case, and Walker had either not attributed those portions or had done so improperly.  He stopped this process after documenting twenty-three instances of

---

[1] In re Bilski was an *en banc* decision of the United States Court of Appeals for the Federal Circuit on the patenting of business methods.  The court by a vote of 9-3 affirmed the rejection of the patent claims involving a method of hedging risks in commodities trading. The Supreme Court subsequently affirmed the Federal Circuit.

apparent plagiarism.

After showing this evidence to Ms. Kitzinger, Mr. Hamburger and Ms. Kitzinger brought the matter to the attention of Dean of Students Ellen Cosgrove. Dean Cosgrove in turn notified the HLS Administrative Board (the "Board"), which is responsible for academic regulations and standards of conduct at HLS. The Board reviewed the record and voted to go forward on charges of plagiarism. After notifying plaintiff and consulting with her counsel, the Board scheduled a hearing on May 7, 2009.

As Dean of Students, Dean Cosgrove served as the Secretary to the Board. In that capacity, prior to the hearing she provided to each Board member copies of the 29-page statement and 313 pages of exhibits plaintiff's attorneys submitted. The Dean also worked with plaintiff's attorneys to help them collect evidence, including internal JOLT emails. Dean Cosgrove was not a voting member of the Board.

Though plaintiff attempted to resolve the situation without a hearing, she was informed that plagiarism is too serious a charge to resolve informally. Plaintiff also requested to change her exam schedule to allow more time to prepare for the hearing, but was denied.

At the conclusion of the hearing, the Board issued Walker a formal reprimand, rather than the normal sanction of suspension, thus allowing Walker to graduate on time with her class. The letter of reprimand is kept private in Ms. Walker's file and not published, though it's existence is noted on her transcript. Her transcript is not made available without her consent.

## II. Standard of Review

Summary judgment is appropriate when the moving party shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering whether or not a genuine issue of material fact exists, the court "must view the evidence in the light most favorable to the opposing party."  Tolan v. Cotton,134 S. Ct. 1861, 1866 (2014).

Plaintiff contends that Harvard's *Handbook of Academic Policies* and its *Rules Relating to Law School Studies* (the "Student Handbook") together constitute a binding contract between the university and its students. Compl. ¶ 5.  "[A]n entering student forms a contractual relationship with her university and . . . a disciplinary code can be part of that contract."  Kiani v. Trustees of Boston Univ., CIVA 04CV11838PBS, 2005 WL 6489754 (D. Mass. 2005).  Contracts between students and universities are interpreted "in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them."  Havlik v. Johnson & Wales Univ., 509 F. 3d 25, 34 (1st Cir. 2007); see Schaer v. Brandeis Univ., 432 Mass. 474, 478 (2000) (citing Cloud v. Trustees of Boston Univ., 720 F.2d 721, 724 (1st Cir. 1983)).  Contract interpretation, including whether any ambiguities exist in the disputed contractual terms, is generally a question of law for the court.  Driscoll v. Bd. of Trs. of Milton Acad., 70 Mass. App.Ct. 285, 293, 873 N.E.2d 1177 (2007).

## III. Meaning of "Submit" - Count I

Count I of the complaint alleges that Harvard breached its contract with Walker

by finding she had committed plagiarism because her February 24 draft was "not a 'submitted' work as defined by the . . . Student Handbook." Compl. ¶ 45. The parties do not dispute that work for JOLT fell within the Student Handbook. Rather, plaintiff argues that "[t]he plain meaning of the word 'submitted' is "to yield or surrender to the will of another." Id. But that is far from the plain meaning of "submitted" in this context.

>The relevant Handbook provision states that
>
> [a]ll work submitted by a student for any academic or non-academic exercise is expected to be the student's own work. In the preperation of their work, students should always take great care to distinguish their own ideas and knowledge from information derived from sources . . . Students who submit work that is not their own without clear attribution of all sources, even if inadvertently, will be subject to disciplinary action.

Docket # 34, ¶ 8.

Far more reasonable than the meaning proposed by plaintiff is the first definition in *Merriam-Webster*'s dictionary, "to give [a document, proposal, piece of writing, etc.] to someone so that it can be considered or approved." *Submit*, MERRIAM-WEBSTER DICTIONARY ONLINE, (2014), *available at* www.merriam-webster.com/dictionary/submit. Moreover, the definition provided by plaintiff is properly that of the verb when it takes no object, that is, in its intransitive form. In the phrase "all work submitted" from the Handbook, "submit" takes the object "work," clearly in its transitive form and matching the "to give to someone for consideration or approval" definition. See *Submit*, Oxford Dictionaries, *available at* http://www.oxforddictionaries.com/us/definition/american_english/submit/.

There is simply no situation where HLS could have reasonably expected a third-

year member of a law journal to believe that the handing over a draft article to that journal for editing prior to publication was not "submitting" the work within the meaning of the Handbook.  Plaintiff gave a piece of writing, a draft of her note, to an editor of JOLT so that it could be approved for publication. Plaintiff suggests that because she viewed the piece she turned in as a work in progress, it was not a submission within the meaning of the Handbook.  See Plaintiff Megon Walker's Opposition to Defendants' Motion for Summary Judgment, Docket # 41, pg. 18-19.  Nowhere in any reasonable meaning of the term "submit" is any concept of finality, as plaintiff attempts to insert.  Ms. Walker's subjective understanding of the term here is irrelevant; because the meaning she ascribes to the term is unreasonable, the university could not have reasonably expected a student to interpret the term in that way.

Under the proper meaning of the term "submit," there is no question that turning in a draft of an article for editing by JOLT would qualify as a "submission," whether or not the draft was the author's "final" draft.  Defendants are therefore entitled to summary judgment on Count I.

**IV.  Board Proceedings Contract Claim - Count II**

Plaintiff alleges that Harvard breached its contract with her because it failed to comply with the Handbook provisions for Board proceedings in four ways: (1) that the hearing "would be non-adversarial"; (2) that "it would be concluded in the manner most favorable to [her] in light of the circumstances"; (3) that "[she] would have the right to cross-examine any witness at the hearing who had offered evidence against [her]"; and (4) that "[she] would [not] be sanctioned unless the charged infraction [was] established

by clear and convincing evidence." Compl. ¶ 48. I will address each of these claims in turn.

"Where, as here, the university specifically provides for a disciplinary hearing . . . we review the procedures followed to ensure that they fall within the range of reasonable expectations of one reading the relevant rules." Cloud, 720 F.2d at 724-25. As above, it is not what *plaintiff's* expectations of the proceeding were, but whether the proceedings fell "within the range of reasonable expectations of one reading the relevant rules," an objective reasonableness standard. Id. The court must "also examine the hearing to ensure that it was conducted with basic fairness." Id.

### A. Adversary Nature of Proceeding

Ms. Walker's first claim on this count is that the Handbook guarantees a non-adversarial proceeding and that the proceedings here were adversarial. Compl. ¶ 50. The relevant Handbook provision states that the "Board does not consider itself to be an adversarial or prosecutorial body," Docket # 34, ¶ 81. Even if HLS could reasonably expect a student to interpret that passage as guaranteeing a non-adversarial proceeding, the transcript and undisputed facts reflect nothing to indicate the proceeding was conducted in an adversarial manner. Plaintiff recites a litany of conduct she found objectionable[2] during the proceedings, and seeks to weave those

---

[2]That Kitzinger and Hamburger were allowed to confer during the hearing prior to answering questions posed to them jointly; that on one occasion she was required to answer a question regarding her beliefs on her own rather than through counsel; Dean Cosgrove's "fail[ure] to act as an impartial liason" between the Board and herself and her "consistent[] hostil[ity]" to plaintiff and her counsel; exemplified by her rejection of plaintiff's attempts to "plead" without a hearing; her failure to conduct discovery on plaintiff's behalf until plaintiff appealed to Professor Weinreb; and her failure to grant plaintiff an extension on her exams and papers to prepare for the hearing.

isolated events into an impression of an inquisitorial proceeding. The fact is this impression is simply not bourne out by the transcript.

None of the instances Ms. Walker cites, even taken together in the light most favorable to her, can transmute the proceedings into a prosecution. Several of her claims in this regard simply had no evidence in the record or cannot logically lead to the inference plaintiff seeks to draw. There is no evidence to support Dean Cosgrove's "failure to act as an impartial liaison" or any "consistent[] hostil[ity]." There is no evidence to support plaintiff's contention that Dean Cosgrove "coached" Hamburger and Kitzinger before the hearing. Docket # 34, ¶¶ 101-106.

There is no provision in the Handbook allowing, let alone mandating, an "informal resolution" without a hearing, Docket # 34, ¶ 95, and plaintiff does not dispute that "plagiarism is too serious to resolve without a hearing." Docket #40, ¶ 96. Therefore, failing to allow an informal resolution cannot be viewed as a breach of the Handbook. Likewise, the Dean's refusal to grant an extension for taking exams and handing in papers to allow plaintiff to prepare for the proceedings was not contrary to the Handbook. Docket # 34, ¶ 99. And requiring plaintiff to answer a single question, concerning her own belief, cannot on its own or in any context give rise to any inference of an adversarial atmosphere.

Dean Cosgrove's initial failure to aid plaintiff in discovery might have given some support to plaintiff's contentions—if the Dean had not eventually yielded and helped. Docket # 34, ¶¶ 89, 90.

This leaves plaintiff's objection to allowing Hamburger and Kitzinger to consult

one another during their joint testimony. Even ignoring the informal tone of the proceedings and the limited extent to which the two conferred, Docket # 34, ¶ 136, no rational finder of fact could find that this ruling amounted to a breach of any promise of non-adversary proceedings in the Handbook.

Because there is no genuine dispute that the proceedings were non-adversarial, summary judgment for the defendants as to the claim of improper adversarial proceedings is appropriate.

### B. Concluding the Proceeding as Favorably to Plaintiff as Possible

Plaintiff claims that defendant Weinreb violated the Handbook's terms because "he deemed 'submitted' [her] uncompleted, virus-impaired draft" and "engaged in additional unfair conduct." Compl. ¶¶ 48, 51. She alleges this is a violation because of the Handbook's provision stating that the Board seeks to resolve hearings "as favorably to students as possible consistent with the maintenance of the high academic and ethical standards of Harvard Law School." Docket # 34, ¶ 81. This aspiration is reasonably susceptible only to the interpretation that students will usually receive the most favorable outcome possible *within the bounds of the rules.* As discussed in Part III, *supra*, plaintiff had plagiarized within the meaning of the Handbook. The Board therefore had no obligation under the Handbook to find plaintiff not in violation. Defendants did not breach the terms of the Handbook by issuing a lessor sanction, or reprimand, rather than the standard penalty of suspension, at their own discretion. See Schaer, 432 Mass. 474, 482 ("A college must have broad discretion in determining appropriate sanctions for violations of its policies.")

### C. Right to Cross-Examination

Walker claims that she was denied the opportunity to cross-examine witnesses in violation of the terms of the Handbook. While the Handbook guarantees the right to "examine all witnesses," there is no further description of what this would entail. The transcript reflects that the instances where cross-examination was curtailed were on the grounds of irrelevance to the proceedings. Given that similar limits exist in most courts, no reasonable student could have expected a completely unlimited right of cross-examination. "It is not the business of lawyers and judges to tell universities what statements they may consider and what statements they must reject." Schaer, 432 Mass. at 481.

### D. Quantum of Evidence

The Handbook guarantees that "[d]isciplinary sanctions shall not be imposed unless conduct warranting sanction is established by clear and convincing evidence." Docket # 34, ¶ 81. Walker alleges that the Board's finding of a violation was not supported by clear and convincing evidence.

Part of this claim is premised on the use of impermissible evidence. "Although [some] statements would be excluded from a courtroom under the rules of evidence, a university is not required to abide by the same rules." Schaer, 432 Mass. at 481. "It is not the business of lawyers and judges to tell universities what statements they may consider and what statements they must reject." Id.

There is no genuine dispute Ms. Walker turned in work that was not properly attributed. Given that this court will not second-guess the Board's evidentiary rules and

that Ms. Walker's conduct fell within the Handbook's provision, see *supra* Part III, there is no genuine dispute of fact that the Board had sufficient evidence to find a violation.

### E. Basic Fairness

Plaintiff claims that the Board's proceedings were "unfair." While a reviewing court must examine disciplinary proceedings to ensure they comport with notions of "basic fairness," Cloud, 720 F.2d at 724-25, "[a] university is not required to adhere to the standards of due process guaranteed to criminal defendants or to abide by rules of evidence adopted by courts." Schaer, 432 Mass. at 482. It is undisputed that Ms. Walker had notice of and understood the charges she faced and had a hearing before the Board. She had the assistance of legal counsel, both in preparation for the hearing and during it, and her counsel examined witnesses and argued on her behalf. She was entitled to call witnesses and submitted whatever documents she desired. The hearing was transcribed and the transcript made available to her. Finally, Ms. Walker was herself a sophisticated party, having nearly completed her JD at Harvard Law School. All of this comports with principles of basic fairness. See, e.g., Kiani, 2005 WL 6489754 at *8.

## V. Defamation Claim - Count IV

Count IV of the complaint alleges that the defendants defamed Ms. Walker because her HLS transcript states that she "was issued a letter of Reprimand by the Administrative Board," which states that she committed plagiarism, and that the defendants "knowingly and intentionally communicat[ed] and publish[ed] [these] false statements." Compl. ¶¶ 64-65.

To establish a defamation claim under Massachusetts law, proof of four elements is required: (1) that "[t]he defendant made a statement, concerning the plaintiff, to a third party"; (2) that the statement was defamatory such that it "could damage the plaintiff's reputation in the community"; (3) that "[t]he defendant was at fault in making the statement"; and (4) that "[t]he statement either caused the plaintiff economic loss ... or is actionable without proof of economic loss." Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (quoting Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003)).

As a matter of law defendants were not at fault, failing the third Shay factor, because truth of the matter asserted is a defense to a claim for defamation. Mass. Gen. Laws Ann. ch. 231, § 92 (West). Because the plaintiff committed plagiarism within the meaning of Harvard's Student Handbook, see *supra* Part III, the publications of fact she alleges libelous are true, and she cannot recover.

Even though the written statements at issue are true, plaintiff may still recover for them if she can prove defendants acted with "actual malice." Mass. Gen. Laws Ann. ch. 231, § 92 (West). Actual malice, in this context, means common law malice, ill will, or malevolent intent. Piccone v. Bartels, CIV.A. 11-10143-MLW, --- F.Supp.2d —, 2014 WL 4180804 (D. Mass. Aug. 25, 2014). The Harvard defendants believed that the findings of the letter of reprimand were true and had come to this conclusion through a thorough and fair proceeding, see *supra* Part IV. Ms. Walker does not plead ill will or malevolent intent on the part of the defendants and can make no such showing on the record before the court. Defendants are therefore entitled to summary judgment on Count IV.

## VI.  Claim for Injunctive Relief - Count VI

Because Walker's contract and defamation claims fail, <u>see</u> *supra* Parts III-VI, she is not entitled to injunctive relief.

## VII.  Conclusion

Defendants' motion for summary judgment is ALLOWED.

Judgment may be entered for the defendants.

| December 30, 2014 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |